SHELLEY G. SHINN *et al.*, Objectors-Petitioners, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District No. 4—88—0328

Opinion filed May 25, 1989.

Julian E. Cannell and Ruth A. Snyder, both of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria, for petitioners.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

Sandra J. Holman, of Illinois Education Association, of Springfield, and Robert H. Chanin and Bruce R. Lerner, both of Bredhoff & Kaiser, of Washington, D.C., for respondents Rockford Education Association and Dunlap Education Association.

JUSTICE KNECHT delivered the opinion of the court:

■■ The question presented by this appeal is whether employees included in an educational labor bargaining unit, who are not members of the union which is their exclusive bargaining representative, must file objections in order to have their fair share fee payments to the union reduced by the amounts thereof attributable to expenditures for union activities unrelated to collective bargaining. We hold such employees must file objections in order to avoid paying their proportionate shares of union expenditures unrelated to collective bargaining and affirm the decision of the Illinois Educational Labor Relations

Board which so held.

■ Disputes of the type with which we are here confronted arise from a labor union's duty to fairly represent all employees—both union members and nonmembers—included in bargaining units for which the union is the exclusive bargaining representative. In such situations, the union's right to receive compensation for services it provides nonmembers conflicts with the first amendment rights of such employees to freedom of association for the advancement of ideas. The Supreme Court has held in such circumstances, nonmembers of unions may be required to pay the union which is their exclusive bargaining representative only their fair share of the costs of collective bargaining and other activities normally and reasonably employed by the union to implement its duties as the employees' exclusive bargaining representative. See *Ellis v. Brotherhood of Ry., Airline & Steamship Clerks, Freight Handlers, Express & Station Employees* (1984), 466 U.S. 435, 80 L. Ed. 2d 428, 104 S. Ct. 1883; see also *Abood v. Detroit Board of Education* (1977), 431 U.S. 209, 52 L. Ed. 2d 261, 97 S. Ct. 1782.

When it enacted the Illinois Educational Labor Relations Act (IELRA) (Ill. Rev. Stat. 1987, ch. 48, par. 1701 *et seq.*), the General Assembly recognized educational labor unions provide important services to nonmembers for whom the unions are the exclusive bargaining representatives. Therefore, the legislature provided in section 11 of the IELRA for the deduction of fair share fees from the pay of nonmembers of educational labor unions, when an educational employer and a union have executed a contract providing for such deductions:

"When a collective bargaining agreement is entered into with an exclusive representative, it may include a provision requiring employees covered by the agreement who are not members of the organization to pay to the organization a fair share fee for services rendered. The exclusive representative shall certify to the employer an amount not to exceed the dues uniformly required of members which shall constitute each non member employee's fair share fee. The fair share fee payment shall be deducted by the employer from the earnings of the non member employees and paid to the exclusive representative.

The amount certified by the exclusive representative shall not include any fees for contributions related to the election or support of any candidate for political office. Nothing in this Section shall preclude the non member employee from making voluntary political contributions in conjunction with his or her

fair share payment." (Ill. Rev. Stat. 1987, ch. 48, par. 1711.) In recognition of the constitutional right of nonmembers of unions not to be compelled to financially support union activities unrelated to collective bargaining, the Illinois Educational Labor Relations Board (IELRB) has promulgated rules which establish a procedure for handling objections to fair share fees. These rules are designed to insure payers of fair share fees are not compelled to support union activities unrelated to collective bargaining which they find objectionable. 80 Ill. Adm. Code §§1125.10 through 1125.90 (Supp. Jan. 1, 1986).

Pursuant to the IELRB's rules, the petitioners, who are not members of the educational labor unions which are their exclusive bargaining representatives, filed objections to the fair share fees which are deducted from their pay. Generally, the petitioners contended they are entitled to automatic advance reductions in their fair share fees in the amounts thereof which represent expenditures for activities unrelated to collective bargaining, regardless of whether they filed objections to the fees. The petitioners contended the requirement they file objections to their fair share fees, in order to receive rebates of the amounts thereof attributable to union expenditures for activities unrelated to collective bargaining, imposes an "unfair burden" on them.

The petitioners and the educational labor unions involved in this case (the Rockford Education Association, IEA/NEA (Illinois Education Association/National Education Association), and Dunlap Education Association, IEA/NEA), filed an agreed statement of facts with the IELRB which provides: (1) petitioners are employed by public school districts which have entered into collective-bargaining agreements with IEA affiliates; (2) the collective-bargaining agreements in question contain provisions requiring employees within the bargaining units who are not union members to pay the unions which are their exclusive bargaining representatives a fair share fee for "services rendered"; (3) substantially all of the local IEA affiliates who charge nonmembers fair share fees certify such fees in amounts equal to union dues; (4) during the 1985-86 school year, IEA affiliates charged nonmembers who objected to the amount of their fair share fees 86.7% of the dues charged union members; (5) during the 1986-87 school year, IEA affiliates charged nonmembers who objected to amount of their fair share fees 84.69% of the dues charged union members; (6) during the 1985-86 and 1986-87 school years, 13.3% and 15.31%, respectively, of the dues uniformly required of union members were rebated to objecting fee payers; (7) with respect to the 1986-87 school year, perhaps as much as 15.31% of the amount of fair share fees certified to employers are attributable to expenditures for

" 'nonchargeable activities' "; and (8) none of the IEA's expenditures are contributions related to election or support of any candidate for political office.

In an order entered April 8, 1988, the IELRB rejected the petitioners' contentions and held educational labor unions are not required to provide automatic advance reductions in the fair share fees of nonmembers who do not file objections to the amount of the fees. The principal reason which the IELRB stated for its decision was section 11 explicitly authorizes the exclusive representative of the employees in a bargaining unit to certify a fair share fee equal to the amount of the dues uniformly required of union members, provided the fee does not include any contributions to candidates for political office. In the IELRB's view, the requirement fair share fees be limited to amounts attributable to "services rendered" is satisfied by it determining the percentages of the fees attributable to such services after the filing of objections, pursuant to the applicable administrative rules. (80 Ill. Adm. Code §§1125.10 through 1125.90 (Supp. Jan. 1, 1986).) The IELRB further held in view of the petitioners receiving notices their fair share fees were equal to the amount of union dues and notices of the procedure for objecting to the fair share fees, the petitioners were not unduly burdened by the requirement they file objections in order to obtain reductions of the amount of their fair share fees. In support of its decision, the Board relied on the legislative history of section 11, and on Federal decisions holding objecting nonmember fee payers have the burden of making known their objections to fair share fees.

In appealing the IELRB's decision, the petitioners contend that under section 11, the fair share fees which may be withheld from the pay of nonmembers of educational labor unions may not exceed the amounts of unions dues attributable to expenditures for "services rendered," may not exceed the union dues uniformly charged to nonmembers, and may not include any amounts attributable to expenditures for political contributions. The petitioners further argue a requirement nonmembers file objections in order to obtain rebates of the amounts of their fair share fees attributable to expenditures for activities unrelated to collective bargaining imposes an undue burden on such individuals.

In support of their argument, petitioners rely on what they contend is the plain and unambiguous language of section 11. The petitioners maintain the Federal decisions relied upon by the IELRB are distinguishable, because under Federal law, objections to fair share fees are necessary in order for nonmembers to have standing to as-

sert compelled payment of various components of fair share fees violates their constitutional rights.

As a basis for its position nonmembers must file objections in order to avoid paying the portions of their fair share fees which are attributable to expenditures unrelated to collective bargaining, the IELRB argues as used in section 11, "services rendered" may include activities unrelated to collective bargaining. The IELRB also relies on the contrast between the language of section 11 and the language of the portion of the Illinois Public Labor Relations Act (IPLRA) governing fair share fees (Ill. Rev. Stat. 1987, ch. 48, par. 1603(g)), on its rules governing fair share fee objections (80 Ill. Adm. Code §§1125.10 through 1125.90 (Supp. Jan. 1, 1986)), and on the legislative history of section 11.

Also, the IELRB asserts allowing fair share fee objections to remain in force indefinitely would deprive nonmembers of the right to periodically review financial information provided them by the unions. Finally, the IELRB maintains requiring advance reductions of the fair share fees of nonmembers in the amounts thereof attributable to activities unrelated to collective bargaining would deprive unions of the fair share fees which they would otherwise receive from nonmembers who are not dissatisfied with the services unrelated to collective bargaining which the unions provide them.

The educational labor unions' argument begins with the observation that interpretations by administrative agencies of statutes which they are charged with enforcing are entitled to great weight. The unions state the IELRB's decision was mandated by the comprehensive rules which it has promulgated governing objections to fair share fees. (80 Ill. Adm. Code §§1125.10 through 1125.90 (Supp. Jan. 1, 1986).) The unions assert (without citation of authority) the IELRB expended an enormous amount of time and resources in the development of these rules and note the IELRB is directed by section 5 of the IELRA to "adopt, promulgate, amend or rescind rules and regulations *** as it deems necessary and feasible to carry out this Act." Ill. Rev. Stat. 1987, ch. 48, par. 1705(h).

The educational labor unions also reiterate the arguments of the IELRB which are premised on the language of section 11, the contrast between the language of section 11 and the language of the relevant portion of the IPLRA, and the legislative history of section 11. The unions also contend the phrase "services rendered," as used in section 11, is not so clear and unambiguous that resort to extrinsic aids in interpreting it is impermissible.

■ As the petitioners point out, clear statutory language should

generally be given effect without resort to extrinsic aids in construction. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167.) However, the term "services rendered," in the context of section 11 of the IELRA, is simply too unspecific to support application of this principle. There are no clear indications of the services which this term encompasses, and it is uncertain whether this term refers only to services related to collective-bargaining activities. For these reasons, we conclude resort to extrinsic materials is permissible in determining the meaning of the relevant language of section 11.

As noted by the respondents, the version of what is now section 11 of the IELRA (Ill. Rev. Stat. 1987, ch. 48, par. 1711) which was contained in the initial draft of the IELRA passed by the legislature provided:

"Section 13. Non-member proportionate share payments. When a collective bargaining agreement is entered into with an exclusive representative, it may include in the agreement a provision requiring employees covered by the agreement who are not members of the organization to pay their proportionate share of the costs of the collective bargaining process, contract administration and pursuing matters affecting wages, hours and conditions of employment, measured by the amounts of dues uniformly required of members. The organization shall certify to the employer the amount constituting each non-member employee's proportionate share which shall not exceed dues uniformly required of members. In such case, the proportionate share payment in this Section shall be deducted by the employer from the earnings of the non-member employees and paid to the employee organization." (83d Ill. Gen. Assem. House Proceedings, May 18, 1983, at 2648-49 (1983 Sess.).)

This version did not contain the language presently contained in section 11 dealing with contributions to candidates for political office. Governor Thompson issued an amendatory veto of the legislation which contained the version of section 11 just quoted. In his amendatory veto message, the Governor suggested, *inter alia*, the legislation be amended so section 11 of the IELRA reads as it presently does.

During the Senate debate concerning the IELRA after it was amendatorily vetoed, the following exchange occurred between Senators Demuzio and Bruce:

"SENATOR DEMUZIO:

On your explanation, you referred to a procedure whereby the fair share payers who [*sic*] object and receive a partial refund of the fair share fee for those amount of dues that do not

go toward the activities related to improving working conditions. Since there's no specific reference to such a refund procedure in the bill, am I correct in assuming that you envision the Educational Labor Relations Board promulgating rules calling for school employee unions to establish procedures?

\*\*\*

SENATOR BRUCE:

I ... I certainly think that the Educational Labor Board in drafting their rules and regulations would take a close look at the Supreme Court and what they've handled. \*\*\* After the Aboud [*sic*] decision came down, every AF of L ... CIO Union in the United States and including the National Education Association and the AFT, set up and have implemented a voluntary program to refund money to objectors. Under most of those plans, an exclusive representative promptly at the end of its fiscal year selects an impartial third party to determine the appropriate fair share amount of funding. '*If a fair share payer objects to paying for activities unrelated to collective bargaining,*' and those are the words of the United States Supreme Court, 'and improving working conditions,' again, the words of the United States Supreme Court, 'the exclusive representative shall promptly establish an interest bearing escrow account and place the amount established by the impartial third party not properly a part of the fair share payment therein and put that in escrow; *thereafter, a dissenting employee would receive payment for the amount determined to have been expended for unrelated activities.*' He would get that back plus accrue[d] interest. I ... you should note two things that complies [*sic*] with the ... with the decision in Ellis \*\*\*. *First of all, that an objector will get back his money for unrelated activities*; that is unrelated to collective bargaining and working conditions. That comes back quickly and automatically. Secondly, the money withheld is not used by any ... exclusive bargaining agent. It is immediately put up in ... in escrow, and the amount due back is determined and refunded with interest." (Emphasis added.) 83d Ill. Gen. Assem., Senate Proceedings, Nov. 2, 1983, at 58-60 (statements of Senators Demuzio & Bruce).

Finally, the provision of the IPLRA which addresses the issue of fair share fees payable by nonmembers of unions, and which was enacted at the same session of the legislature as the IELRA, provides as follows:

"(g) 'Fair share agreement' means an agreement between the

employer and an employee organization under which all or any of the employees in a collective bargaining unit are required to pay their proportionate share of the costs of the collective bargaining process, contract administration and pursuing matters affecting wages, hours and other conditions of employment, but not to exceed the amount of dues uniformly required of members. The amount certified by the exclusive representative shall not include any fees for contributions related to the election or support of any candidate for political office. Nothing herein shall preclude an employee from making voluntary political contributions in conjunction with his/her fair share payment." Ill. Rev. Stat. 1987, ch. 48, par. 1603(g).

■■■ In determining the effect of ambiguous statutory language, courts may consider the legislative history of the statute which contains the ambiguous language. (*People v. Boykin* (1983), 94 Ill. 2d 138, 445 N.E.2d 1174.) Generally, an amendment of statutory language is presumed to change the effect of the legislation as it existed prior to the amendment. (See *Weast Construction Co. v. Industrial Comm'n* (1984), 102 Ill. 2d 337, 466 N.E.2d 215.) Also, where the language of a particular statute is not clear, it is proper to compare that statute to statutes concerning related subjects in order to discern its meaning. (*Bergin v. Board of Trustees of the Teachers' Retirement System* (1964), 31 Ill. 2d 566, 202 N.E.2d 489.) When the language of section 11, the legislative history of section 11, and the language of the related portion of the IPLRA are considered in view of the above principles, it becomes apparent the interpretation of section 11 which the IELRB adopted in this case is correct.

The exchange between Senators DeMuzio and Bruce which we have quoted indicates Senator Bruce understood (1) only objectors are entitled to rebates of the portions of their fair share fees attributable to expenditures unrelated to collective bargaining, and (2) amounts attributable to expenditures unrelated to collective bargaining are normally included in the fair share fees charged nonmembers of unions by their exclusive bargaining representatives. Furthermore, the failure of the legislature to include in section 11 of the IELRA the very specific limitations on the types of expenditures on which fair share fees may be premised, which are found in the comparable portion of the IPLRA, and in the version of the IELRA which was initially passed by the legislature, suggests a very broad range of activities may form the basis for the fair share fees withheld from nonmembers' pay pursuant to the IELRA.

■■ Nothing in the record indicates the filing of objections pursu-

ant to the procedures prescribed by the IELRB is an undue burden on persons who object to fair share fees. It appears that under the IELRB rules, the filing of an objection involves nothing more than the completion of a rather simple form and its submission to the IELRB. (See 80 Ill. Adm. Code §1125.30 (Supp. Jan. 1, 1986).) We conclude an objection procedure such as this does not unduly burden the payers of fair share fees in the exercise of their constitutional rights.

For all of the above reasons, we hold educational employees who are obligated to pay fair share fees may properly be required to follow the IELRB's objection procedures in order to contest the amount of their fair share fees. Because we conclude the IELRB's decision is fully supported by Illinois statutory and case law, and is not contrary to principles of Federal constitutional law, we need not specifically discuss the Federal decisions dealing with fair share fees upon which the IELRB relied in its order.

The decision of the Illinois Educational Labor Relations Board is affirmed.

Affirmed.

LUND and GREEN, JJ., concur.